■

L.S.S., Appellant,

v.

P.A.S., Respondent.

No. 49128.

Missouri Court of Appeals, Eastern District, Division One.

Nov. 12, 1985.

Eric F. Tremayne, Clayton, for appellant.

P.A.S., pro se.

SNYDER, Judge.

The father here appeals from the trial court's denial of his motion to modify the child custody provisions of a decree of dissolution which was entered on August 27, 1982. A male child, R.L.S., was born of the marriage on August 17, 1978, and in the decree the mother was awarded the custody of the child. The father alleged changed circumstances in his motion to modify and prayed the court to award him custody. The trial court denied the father's motion and he appealed.

The father accuses the trial court of error in finding that no change of circumstances had been shown which would require transfer of custody and that the court's judgment was against the weight of the evidence. This court agrees, reverses the judgment and remands the cause to the trial court with directions.

Appellate review of this case is governed by the well known and oft repeated precepts of *Murphy v. Carron,* 536 S.W.2d 30, 32[1–3] (Mo. banc 1976). The decree of judgment of a trial court must be sustained unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. Rule 73.01. Further, appellate courts are admonished to exercise the power to set aside a decree or judgment on the ground that it is against the weight of the evidence with caution and with a firm belief that the decree or judgment is wrong. This court has that firm belief in the error and wrongfulness of the judgment in this case.

The moving party has the burden of showing a change in circumstances which has occurred since the original award of custody sufficient to justify a transfer of custody. *Ryan v. Ryan,* 652 S.W.2d 313, 315[2] (Mo.App.1983). The father has met his burden. In arriving at this conclusion, the court has considered the fact that the mother was only at times represented by counsel, that she represented herself at the trial court hearing and failed to file a respondent's brief.

The trial court found in its opinion and order that the mother's employment at a material supply store as head cashier had been terminated because of manipulation of the cashing of her personal checks resulting in a shortage of $1,700.00 to the employer; that the mother admitted to having smoked marijuana and to past problems with alcohol, but that there was no evidence that the minor child was adversely affected, except that on one occasion there had been potential harm to the child; that the mother had experienced a period of financial irresponsibility, during which she exhausted approximately $14,000.00 in assets and had had her telephone and electric services discontinued because she was delinquent in paying the bills.

In spite of this, the trial court found that there had been no showing of a change of

circumstances which would require a transfer of custody, but on the contrary, that a transfer at the time of the hearing would be detrimental to the child's best interest.

The father's motion to modify was denied, but the court modified the decree of dissolution by requiring that the mother's custody of the child should be under the ongoing supervision of the Domestic Relations Services staff of the circuit court; that psychotherapy should be provided to the child; and that the father and mother each provide telephone availability to the child during their respective custody periods so that the child could receive telephone calls from the parent not having custody at the time. (There were complaints from both parties that the other had interfered with his or her telephone calls to the child.)

In addition to the court's specific findings, there was evidence from the mother, herself, and from independent witnesses of other detrimental factors in the life of the minor child since the decree of dissolution. The principal of his school testified that the child was absent 15 days during the period August 29, 1983 through March 14, 1984 and that he was tardy 12 days during the same period, a 144 day school year. There was, however, some evidence that the minor child was doing well in school at the time of the hearing.

The mother admitted smoking marijuana in the presence of the son and driving with the son in the car when she had been drinking. There was independent evidence from two friends and fellow employees of the mother who testified reluctantly that she drank to intoxication with some regularity, and in the presence of her son. There was also evidence that she telephoned her roommate from a bar at a soccer game and told her to leave the child alone for a period of 40 minutes while the roommate took the babysitter home.

The child's paternal grandmother, who babysat regularly with the child, testified that he was frequently improperly and insufficiently clothed and that his personal hygiene needs were not cared for.

The court made no finding concerning the credibility of the other witnesses, who were the mother's friends, the paternal grandmother, the mother's superior at the material supply store, and employees of the gas and electric utilities.

A further explanation of the financial problems mentioned in the court's order reveals that the mother went through the sum of approximately $14,000.00 which she received as her share of the proceeds of the sale of the parties' residence, in a one month period from April 18, 1983 through May 19, 1983. A portion of the money was used to pay debts, the exact amount not disclosed by the record.

The mother's utilities problems were considerable. The electric service was cut-off from October 13, 1983 to November 15, 1983, after the utility had sent four reminder notices and three notices threatening disconnection. She was delinquent in her electric bill for one month at the time of the hearing.

The phone service had been disconnected more than once, was disconnected at the time of the hearing and had been for a period of several months.

The mother was in arrears on her bill to the gas utility in the amount of $576.98 at the time of the hearing in spite of continued collection efforts by the utility, and the gas service would have been discontinued except that her service also provided gas for another residence, the bill for which was paid.

A custody study was made by the Domestic Relations Services of the circuit court. The home situations, although not equal, were not so different as to influence the custody decision. The mother and the minor child have lived alone in an apartment in St. Louis for more than a year, where the furnishings and housekeeping standards were good. It has two bedrooms and one bath.

The father has remarried and lives in a suburb of Denver, Colorado with his new wife and her two daughters, aged 11 and 7. The house is expensive, having four bed-

rooms and three baths. It is attractively decorated and furnished, and the housekeeping standards are good.

Although the father lives on a somewhat more lavish scale than the wife, the minor child would have his own bedroom in either environment, and, as is usual in these cases, there are advantages and disadvantages inherent in either choice of custodian and residence.

The mother is now earning well above average wages as a steamfitter. The father also has adequate income to support the child. The respective financial conditions of the parents would not be a consideration in the determination of custody.

As opposed to the evidence of the changed circumstances which are described above, the only evidence before the court that the best interest of the child would be served by allowing the custody to remain with the mother, other than the mother's testimony that she had turned her life around, was the testimony of a psychologist, whose psychological evaluation was received in evidence at the hearing. In her first evaluation, the psychologist said she was not able to judge the merits of the respective homes or of the parents and she made no custody recommendation, only saying that "any change produces more trauma and should be considered mandatory before recommended."

The psychologist then submitted an addendum in which she said that she thought it would not be in the child's best interest for a change to be introduced at this time and she so testified in court. She also testified that she would not base her judgment on "mothering," one way or the other, upon the fact that the mother may have embezzled money from her employer. The psychological evaluation and her recommendations were based only on the psychologist's interview with the child. She talked with the wife for about 15 minutes and not at all with the husband.

The evidence of the mother's financial misconduct, her drinking and drug use, her lax supervision of the child's care and schooling and her unstable lifestyle since the dissolution are changed circumstances sufficient to support a transfer of custody to the father, and this evidence weighed against the somewhat equivocal testimony of the psychologist induces this court to hold that the judgment denying the motion to modify was against the weight of the evidence to the degree that the judgment must be reversed and the cause remanded.

It is, indeed, an awesome responsibility that courts have in determining these custody matters, affecting directly, as they do, the entire lives of children, and indirectly the lives of parents and other members of the family. No solution can be found which is without its negative aspects. The best that can be done is to examine carefully all of the factors and then make an order which is in the best interests of the child or children involved at the time the order is effective. This court has done so in this case.

The cause is reversed and remanded to the trial court, which is directed to transfer the primary custody to the husband and make such further orders concerning temporary custody, transportation, supervision and psychotherapy as the court deems necessary and possible.

CARL R. GAERTNER, P.J., and SMITH, J., concur.