**SUR–GRO FINANCE, INC.,**
**Plaintiff/Respondent,**

v.

**Howard SMITH, Defendant,**

and

**Frank Palermo, Intervenor/Appellant.**

**No. WD 40042.**

Missouri Court of Appeals,
Western District.

Aug. 23, 1988.

M.A. Thalman, Platte City, for intervenor/appellant.

George Allen Pickett, Plattsburg, for plaintiff/respondent.

Before CLARK, P.J., and
LOWENSTEIN and FENNER, JJ.

FENNER, Judge.

This case involves a dispute between Sur–Gro Finance Inc., (hereinafter Sur–Gro) Plaintiff/Respondent and Frank Palermo, (hereinafter Palermo) Intervenor/Appellant, over the proceeds from the harvest of crops by Howard Smith, (hereinafter Smith) Defendant at trial and not a party on appeal.

On April 15, 1986, Sur–Gro obtained judgment against Smith in the Circuit Court of Clinton County in the principal amount of $26,608.98 together with interest and costs. On September 11, 1986, Sur–Gro obtained a writ of execution and on September 15, 1986, caused the Sheriff of Clinton County to levy on Smith's interest in certain growing crops in Clinton County.

After the levy Palermo claimed a priority interest in Smith's crops. Sur–Gro and Palermo entered into a written agreement allowing Smith's crops to be harvested and the proceeds from the sale of the crops to be deposited in escrow until the dispute concerning priority could be resolved. The proceeds from the sale of Smith's crops totaled $36,503.80.

Both Sur–Gro and Palermo filed petitions seeking a declaratory judgment regarding their relative priority to the Smith crop proceeds. The cause was initially submitted to the trial court on April 9, 1987, based upon a stipulation of the parties. Sur–Gro claimed a priority by virtue of its execution and levy. Palermo claimed a priority by virtue of a promissory note in the amount of $50,000 Smith had executed in Palermo's behalf on March 3, 1986, and a financing statement signed by Smith. The financing statement was in connection with the $50,000 loan and was filed for record on April 8, 1986, in the office of the Recorder of Deeds of Clinton County. Smith was Palermo's son-in-law.

On April 9, 1987, the trial court took the cause under advisement but before judgment was entered Palermo filed a motion to reopen to introduce additional evidence. Palermo alleged to have discovered the existence of a formal security agreement. The trial court held a hearing on May 14, 1987, and granted Palermo's motion allowing him to present further evidence. Time for additional discovery was allowed and on August 28, 1987, the parties appeared for a final hearing on the merits. Once again the trial court took the case under advisement and on September 23, 1987, entered its judgment and found that Sur–Gro had priority over Palermo to the proceeds of Smith's crops.

Palermo's first two points on appeal are interrelated and will be taken together. In his first point Palermo argues that the judgment of the trial court was against the weight of the evidence and in his second point that the trial court erred in disbelieving his evidence.

▪ The benchmark case of *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976), holds that on appeal Rule 73.01 requires that in cases tried by the court without a jury the judgment of the trial court should be sustained unless there is no substantial evidence to support it; it is against the weight of the evidence; or it erroneously declares or applies the law. *Id.* That case

further directs that appellate courts should exercise the power to set aside a judgment on the ground that it is against the weight of the evidence with caution and with a firm belief that the judgment is wrong. *Id.* at p. 32. Special deference should also be accorded the findings of the trial court where those findings rest on a judgment as to the credibility of witnesses. *Trenton Trust Co. v. Western Sur. Co.*, 599 S.W.2d 481, 494 (Mo. banc 1980). The trial court is not bound by the evidence of either party and is free to choose to believe all, some or none of the testimony of witnesses. *Husky Industries, Inc. v. Craig Industries, Inc.*, 618 S.W.2d 458, 460 (Mo.App. 1981). Additionally, the credibility of witnesses is for the trier of facts and the fact that witnesses are not contradicted is not decisive. *Sebree v. Rosen*, 349 S.W.2d 865, 872 (Mo.1961).

In the case at bar the trial court entered a memorandum in which the judge made findings in support of his judgment. As noted by Judge Lewis in his memorandum, absent a valid security agreement Palermo's claim to a priority over Sur–Gro as to the crop proceeds fails.

Palermo argues that taken as a whole the case at bar involves uncontradicted testimony and documentary evidence such that the trial court's finding against him on the question of the existence and validity of the security agreement was error. However, the evidence shows that there was contradictory and conflicting testimony, circumspect occurrences, questionable circumstances, and an affinity relationship between Palermo and Smith.

As stated previously the case was initially submitted to the trial court on April 9, 1987, on a stipulation of facts. There was no allegation that a separate security agreement between Palermo and his son-in-law, Smith, existed on April 9, 1987. The sole legal issue presented to the court at that time was whether or not, in the absence of a formal security agreement, the promissory note and financing statement in evidence were sufficient to perfect Palermo's security interest in Smith's crops and thereby take priority over Sur–Gro's subse-quent judgment and levy. On April 10, 1987, the day after this matter was initially submitted to the trial court, Palermo filed a motion to reopen to introduce the security agreement that he claimed to have found in his briefcase after the case was submitted to the court.

On May 14, 1987, the trial court heard evidence on Palermo's motion to reopen. Palermo testified that after the initial hearing on April 9, 1987, his son-in-law, Smith, reminded him that there was a security agreement. Palermo stated that he looked in his briefcase and found the security agreement. Palermo testified on May 14, 1987, that he received and signed the security agreement on March 3, 1986, the same date that he received the promissory note and financing statement. However, at the final hearing on this cause, August 28, 1987, Palermo testified that the financing statement was executed by him on April 7, 1986, and the security agreement on April 8, 1986. Furthermore, the testimony of Smith's attorney was presented by way of her deposition at the final hearing on August 28, 1987. Smith's attorney testified that she prepared the financing statement on April 7, 1987, the promissory note on April 8, 1987, and the security agreement on April 11, 1986. According to Smith's attorney the documents were not prepared until more than a month after Palermo initially testified that he signed them. Smith's attorney also testified that the financing statement, promissory note and security agreement were all back dated to March 3, 1986, to reflect the date that Smith and Palermo entered into an oral agreement on the matters reflected in these documents and Palermo advanced part of the money.

The initial trial was held on April 9, 1987, which was approximately seven months after Sur–Gro levied on Smith's crops and slightly more than six months after Sur–Gro and Palermo agreed that the proceeds of the Smith crops would be held in escrow until their relative priority could be established. Therefore, Palermo had at least six months before trial to recall the existence of and locate the security agreement but

failed to do so until after his case had been submitted.

The promissory note in question here makes no reference to a security agreement but it does reference a financing statement. A special notation at the bottom of the promissory note stated:

This promissory note is secured by a financing statement on crops grown on lands more particular [sic] set forth in said financing statement recorded in Clinton County, Missouri.

Such language could certainly cause one to question why no reference was made to the security agreement if in fact there was one.

The fact that there is evidence in the record from which a different conclusion might have been reached is not enough to demonstrate the holding is contrary to the weight of the evidence. *Alice v. Ronald,* 683 S.W.2d 307, 310 (Mo.App.1984); *Stegemann v. Fauk,* 571 S.W.2d 697, 700 (Mo. App.1978). The task of judging the credibility of the witnesses is for the trial court and not the court of appeals. *Alice v. Ronald, supra* at 310. The Court of Appeals may not substitute its judgment for that of the trial court as to the credibility of witnesses. *Atkins v. Clark,* 644 S.W.2d 365, 369 (Mo.App.1982).

As reflected in his memorandum, Judge Lewis found the dispositive question before him to be one of credibility and further stated that he did not believe Palermo's evidence regarding the existence of the security agreement. This finding is supported by the evidence.

Palermo next argues that the trial court erred in finding that Sur–Gro had a priority interest in the crop proceeds in that Palermo had priority by virtue of the promissory note, financing statement and security agreement. Neither of the parties argue or appeal the trial court's finding that the promissory note and financing statement in the case at bar did not contain language necessary to create a security interest in Smith's crops. Palermo bases his argument on this point on the existence of a valid security agreement and it has already been established that the court did not err by finding that the security agreement was invalid.

 In a declaratory judgment action the burden of proof rests, as in the usual course, on the party who asserts the issue according to the action. *Shaffer v. Terrydale Management Corp.,* 648 S.W.2d 595, 609 (Mo.App.1983). Palermo has failed to prove the existence of a valid security agreement and accordingly his argument on this point fails.

The judgment of the trial court finding that Sur–Gro has priority over Palermo to the proceeds of Smith's harvested row crops is hereby affirmed in all of its particulars.

All concur.