**John L. KELSEY, Respondent,**

v.

**Robert NATHEY and Laura L. Nathey, Appellants.**

**No. WD 47583.**

Missouri Court of Appeals, Western District.

Dec. 14, 1993.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 1, 1994.

Daniel Dunham and Danieal H. Miller, Columbia, for appellants.

John L. Kelsey, respondent pro se.

Before TURNAGE, C.J., and ULRICH and ELLIS, JJ.

ELLIS, Judge.

Robert and Laura Nathey appeal a $1500 judgment entered against them by the Boone County Circuit Court after a bench trial. We affirm.

Kelsey filed a petition in small claims court on January 31, 1992, alleging breach of contract against the Natheys in connection with a real estate sale. A $1500 judgment was entered in Kelsey's favor on June 5, 1992. The Natheys timely filed an application for a trial *de novo* in the circuit court and the trial "anew" was held on January 21, 1993. During trial, the Natheys moved for dismissal on the grounds that Kelsey's claim was barred by the doctrine of merger. The court overruled their motion. On February 4, 1993, the court entered judgment in favor of Kelsey for $1500 and assessed costs against the Natheys. On February 16, 1993, the Natheys filed a "Motion to Amend Judgment and/or for Dismissal; and Alternative Motion for New Trial." A hearing on the motion was conducted on March 1, 1993. Later that day, the court denied the motion and, apparently in direct response to arguments made by the Natheys at the hearing, entered a supplemental order clarifying certain aspects of its February 4, 1993 judgment. This appeal by the Natheys followed.

■ Although this case originated in small claims court and is now before us on appeal after a trial *de novo* in the circuit court, our standard of review is the same as in other court-tried cases. *Wampler v. Mueller,* 623 S.W.2d 27, 28 (Mo.App.1981). We must defer to the trial court and affirm its judgment "unless there is no substantial evidence to support it, or it is against the weight of the evidence or it erroneously declares or misapplies the law." *Brownstein v. Rhomberg–Haglin & Assoc., Inc.,* 824 S.W.2d 13, 15 (Mo. banc 1992). "Credibility of witnesses and the weight to be given their testimony is for the trial court, which is free to believe none, part or all of the testimony of any witness. We assume the trial court believed the testimony and evidence consistent with its judgment, consequently, we accept as true

the evidence and permissible inferences which may be drawn favorable to the prevailing party, and disregard the contradictory testimony." *Snowden v. Gaynor,* 710 S.W.2d 481, 483 (Mo.App.1986) (citations omitted). So viewed, the evidence establishes that John Kelsey and his wife Susan Kelsey were interested in certain residential Boone County real estate owned by Robert and Laura Nathey. As the Natheys had apparently experienced problems with the home's septic system in the past, the contract of sale, which they signed on June 15, 1991, had a section titled "Financing, Contingencies, and/or Special Agreements" containing this handwritten provision:

> Seller shall within 2 weeks prior to closing complete the following: ... 9) *Install additional laterals to septic tank drainfield so that all effluent is absorbed.* [Emphasis added.]

Kelsey hired a local engineering firm, Marshall Engineering, to perform an inspection of the property. During the inspection, which was completed on June 21, 1991, William Marshall, an engineering expert with 20 years' experience, observed that the aeration unit for the septic tank was "not working" and was "taking in water, surface water from the yard." He also saw effluent leaching out of the ground around the septic tank to form standing pools by the fence in the back yard, in violation of county and state regulations. In a note to the Natheys' real estate agent, Marshall expressed his opinion that "perhaps a sand mound [drainage system] would be a better solution than adding an additional lateral," and offered to install such a system for $450. Kelsey also asked the Natheys to speak to Marshall about the possibility of a sand mound system, but Marshall and Kelsey never heard from either the Natheys or their agent. In early July, 1991, Nathey hired another firm, Lonnie Nichols Trucking and Excavating, to do the work required by the contract.

On July 29, 1991, the date the contract was closed, the septic tank drainfield was dry and there were obvious indications to Kelsey that some modifications to the septic system had been made. He accepted a deed from the Natheys a few days later after releasing funds escrowed for a plumbing inspection, and moved in to the home on August 8, 1991. The following weekend, they noticed the ground around the septic tank had once again become completely saturated and standing puddles of effluent had re-formed in the area. The ground was so wet Kelsey wasn't able to mow the grass in the area where the septic system was located. Over the next two to three weeks, the situation worsened and Kelsey asked Nathey to make appropriate repairs under the terms of the contract, but he refused, saying "he had repaired the system, and since [Kelsey] now owned the property, that it was [his] problem." Kelsey had Marshall reinspect the septic system on September 16, 1991. This inspection revealed that effluent was seeping out of a shallow, recently-excavated 70–foot long trench near the fence in the back yard. Marshall saw "no evidence" a sand mound system had been constructed and "it appeared [to him] that, if anything had been done, [there] had been maybe one or two laterals put across that area and covered and then put—they filled it back over with dirt."

■ After obtaining repair bids from three contractors, Kelsey contacted Nathey again, who once more refused to make any further repairs to the septic system. Kelsey then hired the lowest of the three bidders, Davis Excavating, to install the additional laterals at a total cost of $1674.08.[1] Marshall came back on September 23, 1991 while this repair work was in progress. He examined the entire area, including the earth exposed during the course of the excavation work. These excavations began at the aeration unit, crossed the existing 70–foot trench, and extended down to the fence. He "saw no sand

---

1. Notwithstanding this evidence, $1500 was the maximum amount of damages Kelsey could be awarded. In his original petition, Kelsey claimed damages of $1500 to keep the amount in controversy within the jurisdictional limit of the small claims court. *See* § 482.305, RSMo Supp. 1992. Since the circuit court's jurisdiction when conducting a trial *de novo* is no greater than that possessed by the court in which the case was originally filed and heard, any judgment on trial *de novo* in excess of the $1500 jurisdictional limit of the small claims court "could not stand." *McMenamy v. Main,* 686 S.W.2d 874, 876 (Mo. App.1985).

in the excavation" and concluded that "in [his] professional opinion, no sand mound" drainage system had been constructed on the lot. Upon completion of the work, Kelsey sent Nathey a certified letter requesting reimbursement for the cost of the repairs, which was later returned to him when Nathey refused to accept it. Another letter and a subsequent phone call were equally futile, and Kelsey filed his petition in small claims court approximately three weeks after their last exchange.

▪ In their first point, the Natheys argue that Kelsey failed to join a necessary and indispensable party under Rule 52.04. Kelsey responds that because the Natheys first raised this issue in their post-trial motion, they waived it, citing *DeBacker v. Forbes,* 406 S.W.2d 811 (Mo.App.1966). *DeBacker* was decided prior to adoption of Rule 55.-27(g)(2), which became effective on September 1, 1973. It provides, in pertinent part:

[A] defense of failure to join a party indispensable under Rule 52.04 ... may be made in any pleading permitted or ordered under Rule 55.01, or by motion for judgment on the pleadings, or at trial on the merits, or on appeal.

A defense based on nonjoinder of an indispensable party may be raised for the first time at any stage in a case, including a motion for new trial or on appeal. Rule 55.27(g)(2); *Cunningham v. Burke,* 705 S.W.2d 120, 122 (Mo.App.1986). Thus while *DeBacker* and the authorities cited therein may have been good law on the subject of waiver in 1966, they are no longer controlling, and we must address the Natheys' contention on the merits.

The contract entered into by the parties recited that it was "between Robert & Laura Nathey H/W, Seller, and John L. Kelsey, a married person, Buyer. The terms Seller and Buyer may be either singular or plural according to whichever is evidence by the signatures herein." (Emphasis added). John L. Kelsey signed the contract in the signature space for "Buyer." In addition, the handwritten document styled "Additional Special Agreements" attached to the contract

specifies "John L. Kelsey, Buyer," and was signed by the Natheys and Kelsey. Kelsey's wife, Susan G. Kelsey, signed neither document, nor does her name appear in them.

▪ The Natheys nevertheless argue that since John Kelsey did not join his wife as a party plaintiff, the judgment must be reversed. They first assert that Susan G. Kelsey was an obligee under the contract and cite *Justus v. Webb,* 634 S.W.2d 567 (Mo.App. 1982), for the proposition that if an obligee bringing suit in an action for breach of contract does not join all other obligees under the contract as parties pursuant to Rule 52.-04, he has failed to state a cause of action and the trial court is without jurisdiction to enter a judgment on his petition.

In this case, the court found that Kelsey's wife was not a party to the contract and was not a necessary party to the action. "We are bound by the trial court's fact determinations unless [they are] unsupported by the evidence or clearly against the weight of the evidence." *Norcomo Corp. v. Franchi Constr. Co.,* 587 S.W.2d 311, 317 (Mo.App. 1979). The Natheys concede that the court's factual finding has substantial support in the record, but nevertheless contend that there was evidence from which a contrary finding could have been made. This is not enough to demonstrate that the trial court's finding of fact is against the weight of the evidence. *Sur–Gro Fin., Inc. v. Smith,* 755 S.W.2d 439, 442 (Mo.App.1988). After reviewing the record as a whole, we are not left with "a firm belief that the [finding] is wrong." *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976).

▪ The Natheys next argue that the court's determination that Kelsey's wife was not an obligee on the contract was erroneous *as a matter of law.* They contend Kelsey judicially admitted the fact in his small claims court petition, when he stated "My wife and I purchased real estate at 8550 S. Barry Rd., Columbia, Mo. from the defendants on July 29, 1991."[2] The Natheys cite *Huber v. Western & S. Life Ins. Co.,* 341 S.W.2d 297 (Mo.App.1960), for the rule that judicial admissions contained in the pleadings upon which a case is tried are absolutely

_____

2. Kelsey used the same petition for his trial *de*    *novo.*

binding on the pleader. On the facts in this case, however, *Huber* is not controlling. First, in *Huber* key factual allegations made by the plaintiff in his petition were *admitted · by the defendant* in his answer, thereby conclusively establishing " 'a waiver of all controversy' " on those particular issues. *Huber,* 341 S.W.2d at 299, 300 (quoting *Wehrli v. Wabash R.R.,* 315 S.W.2d 765, 773 (Mo.1958), *cert. denied,* 358 U.S. 932, 79 S.Ct. 321, 3 L.Ed.2d 304 (1959)). Here, the Natheys proceeded to trial *de novo* on a general denial,[3] which put at issue *all* the allegations in Kelsey's petition. *Estate of Sample v. Travelers Indem. Co.,* 492 S.W.2d 829, 833 (Mo.1973). Second, the defendant in *Huber* " 'avail[ed] himself of the other's pleading' " by *offering into evidence* and reading to the jury that portion of the petition he wished to use against plaintiff as an admission. *Huber,* 341 S.W.2d at 299, 300. The Natheys failed to offer Kelsey's petition into evidence. Therefore, the purported admission was not evidence and could not be used against Kelsey. *Martin v. Yeoham,* 419 S.W.2d 937, 952 (Mo. App.1967).[4]

Thus, we conclude the court correctly determined that Kelsey's wife was not an obligee on the contract as a matter of law. Since she did not sign or in any other manner become a party to the contract, the court also correctly held that she was not a necessary party to the action. *DeBacker,* 406 S.W.2d at 813; *Schmitz v. Taylor–Morley–Simon, Inc.,* 708 S.W.2d 786 (Mo.App.1986). Point I is denied.

In their second point, the Natheys contend they cannot be guilty of breaching the contractual provision calling for installation of "additional laterals to [the] septic tank drainfield" because it was mutually abandoned in favor of a new agreement for construction of a sand mound system. Even if there was such a modification to the contract and it was properly supported by new consideration, the Natheys would still be in breach, because they adduced no evidence of any kind that Kelsey ever agreed to release them from their separate promise to provide a properly-functioning septic system which would *absorb all effluent.* "Generally, a contract may be modified by changing some provisions, and yet stand as to the residue of the original agreement." *Maynard v. Bazazzadegan,* 732 S.W.2d 950, 954 (Mo.App. 1987). Point II is denied.

The Natheys argue in their third point that under the doctrine of merger, the obligations of the original sales contract were discharged by and merged into the deed accepted by Kelsey. According to the common law doctrine of merger, once a deed is delivered by the seller and accepted by the buyer as performance of a contract to convey real estate, the contract is merged in the deed and thereafter the deed alone determines the rights of the parties. *Employers Indem. Corp. v. Garrett,* 327 Mo. 874, 885, 38 S.W.2d 1049, 1054 (Mo.1931). Since the deed Kelsey accepted contained no covenants concerning repair or performance of the septic system, the Natheys reason, he now has no cause of action for breach of the original contract of sale.

"[T]he doctrine [of merger] is basically confined to the sufficiency of the deed itself and does not touch other aspects of the original sales agreement. Those latter aspects are generally referred to in the cases as 'collateral matters' which are not affected by the doctrine of merger." *Hutchens Bros., Inc. v. Brownsberger,* 624 S.W.2d 538, 540 (Mo.App.1981). In *Frisbie v. Scott,* 199 Mo. App. 131, 136, 201 S.W. 561, 562 (1918), the court observed (quoting *Bull v. Willard,* 9 Barb. 641, 645 (N.Y.App.Div.1850)):

---

3. Because the Natheys did not (and were not required to) file an answer to Kelsey's small claims court petition, all the allegations therein were "considered denied" as provided in § 482.-355, RSMo 1986 and Rule 144.02. They did not and were not required to file an answer at the circuit court level, either. *See Susman v. Hi-Fi Fo-Fum, Inc.,* 597 S.W.2d 680 (Mo.App.1980). The Natheys therefore went to trial *de novo* on the basis of their previous general denial.

4. Since this was a bench-tried case, as an alternative to introducing the petition into evidence, the Natheys could have requested that the court take judicial notice of its own file, including Kelsey's pleadings. *Bray v. Bray,* 629 S.W.2d 658, 660 (Mo.App.1982). However, they failed to do so.

"[T]he covenant, in order to be deemed collateral and independent, so as not to be destroyed by the execution of the deed, must not look to, or be connected with the title, possession, quantity, or emblements of the land which is the subject of the contract." [Emphasis removed.]

The Natheys' promise to repair the home's septic system is collateral to the deed since it does not "look to" and is not directly "connected with the title, possession, quantity or emblements" of the real estate. Because that contractual obligation is entirely distinct in nature from those relating to title, possession, or the mere conveyance of the property at closing, it was not satisfied by delivery and acceptance of the deed.[5] After examining the various non-Missouri cases cited by the parties and performing our own survey of the law in this area, we believe this interpretation is consistent with the weight of authority from other jurisdictions. *See* Charles S. Parnell, Annotation, *Deed as Superseding or Merging Provisions of Antecedent Contract Imposing Obligations Upon the Vendor,* 38 A.L.R.2d 1310, 1325 (1954 & Supp.1987). Point denied.

■■■ The Natheys' fifth and final point of error[6] is that Kelsey failed to make a proper case on the issue of damages. Without citing any applicable authority, they contend Kelsey offered no evidence as to the diminution in value (i.e., the difference between the value of the property as promised and its value as actually received) and his presentation of evidence solely on the cost of repairing the septic system was legally insufficient to support an award of damages. The proper measure of damages for a vendor's breach of a contract to sell real estate is the "actual injury the vendee has sustained." *Jones v. McGinley Land Co.,* 228 Mo.App. 944, 950, 74 S.W.2d 853, 856 (1934); *Kim v. Conway & Forty, Inc.,* 772 S.W.2d 723, 726–27 (Mo.App.1989). Here, Kelsey was actually injured in the amount of $1674.08, the reasonable cost of completing the contract.[7] *See Edmonds v. Stratton,* 457 S.W.2d 228, 233 (Mo.App.1970). Kelsey was entitled to an award of damages which would put him " 'in as good a position as he would have been had the contract been performed.' " *Hernandez v. Westoak Realty & Inv., Inc.,* 771 S.W.2d 876, 880 (Mo.App.1989) (quoting Dan B. Dobbs, *Remedies,* § 12.1 (1973)). Because Kelsey was forced to pay Davis Excavating to complete the job the Natheys originally promised to do, the damage award he received does that. Point denied.

The judgment is affirmed.

All concur.

5. The Natheys, citing *Zanphir v. Bonnie Meadows, Inc.,* 127 N.Y.S.2d 269 (Sup.Ct.1953), argue that because Kelsey entered into an escrow agreement at closing and accepted the deed after releasing those funds, the parties intended that the original contract be merged in the deed and that only the escrow agreement itself would survive it. However, in *Staff v. Lido Dunes, Inc.,* 47 Misc.2d 322, 262 N.Y.S.2d 544, 549–50 (Sup.Ct. 1965), the court held that *Zanphir* was not to be applied where the buyer released the escrowed funds and accepted the deed with no knowledge of a latent defect, which is precisely what happened here. To the extent *Zanphir* is inconsistent with our holding, we choose not to follow it. The Natheys also claim that because the contract provides that repairs to the septic system were to be completed "within 2 weeks prior to closing," the parties intended this clause merge into the deed. This claim, too, is meritless. There was no testimony to this effect at trial, and in both cases the circuit court implicitly resolved the intent issue against them when it denied their motion for dismissal.

6. Because we decide this case on breach of contract principles, we need not address the Natheys' fourth point denying breach of any implied warranty of habitability.

7. However, as discussed earlier, because he originally filed his suit in small claims court, $1500 is the most Kelsey can recover.