**Harry MATHIS, d/b/a Doors of Columbia, Plaintiff-Appellant,**

v.

**Clifford B. GLOVER, et ux., et al., Defendants-Respondents.**

No. 14207.

Missouri Court of Appeals,
Southern District,
Division One.

Aug. 13, 1986.

Tracy Mathis, John C. Hannegan, Hannegan, Stokes, Moerschel & Weber, P.C., St. Charles, for plaintiff-appellant.

Erik A. Bergmanis, Charles E. McElyea, Phillips, McElyea, Walker & Carpenter Corp., Camdenton, for defendants-respondents.

TITUS, Presiding Judge.

Plaintiff Harry Mathis, d/b/a Doors of Columbia, and defendant Clifford B. Glo-

ver, at various times agreed that plaintiff would custom manufacture, deliver and install in the new Lake of the Ozarks home of defendant and his wife, a mahogany exterior door and sidelight glass, together with interior display cabinets, doors, stair railing, trim, casings and jambs. Defendant gave plaintiff a $1,700.00 deposit on the total agreement by a check dated "February 8, 1982." After the doors, etc., had been manufactured and assembled in plaintiff's Columbia plant, they were on March 15, 1983, transported to and installed in defendant's home by plaintiff's son and a fellow employee. When this work, together with suggested minor adjustments, was completed, defendant gave plaintiff's agents a $7,013.79 check supposedly representing the balance due plaintiff for labor and materials furnished and installed, together with taxes owed. After a closer daylight inspection of the exterior mahogany unit and display cabinets, defendant became dissatisfied with the quality of workmanship and material used in their production and installation. Defendant then stopped payment on the $7,013.79 balance check. Thereafter, and without being able to agree with plaintiff on the true balance owed, defendant sent plaintiff a $1,768.46 check as "Balance in full for Interior doors and white pine trim." This check, dated April 8, 1983, was refused and the instant litigation ensued.[1]

Plaintiff sued defendant Clifford B. Glover et uxor and others for $7,517.33[2] and prayed the judgment thereon be ordered to constitute a lien on the subject real estate. Albeit the court, in this court-tried action, found no lien was available to plaintiff because of his failure to give the required "NOTICE TO OWNER" pursuant to § 429.012[3], it held a cause of action existed for the averred underlying debt. However, the court nisi found and ruled plaintiff was not entitled to recover for the exterior mahogany unit etc. but was only entitled to recover for the "interior doors, white pine trim and related work" and assessed plaintiff's damages at $4,456.24 less the $1,700.00 down payment for a net of $2,756.24. This amount was adjudged recoverable from defendant Clifford B. Glover only but not his wife because she "was not a party to the contract with plaintiff." The court additionally ruled that as plaintiff's work relating to the exterior mahogany unit etc. was not properly performed, defendants Clifford B. Glover et uxor were entitled to recover of plaintiff the sum of $1,280.00 on their counterclaim. Only plaintiff appealed.[4]

■ In prelude to our consideration of the points relied on and our recitation of the facts pertinent thereto, which plaintiff sometimes ignores, we remind all that in court-tried cases it is presumed the trial court considered only the evidence properly received. Consequently, the reception of improper evidence, if any, by the trial court as may be shown by plaintiff can hardly ever be grounds for reversal when we have, as here, concluded the competent evidence in the record is sufficient to support most of the trial court's findings. *In re Richard*, 655 S.W.2d 110, 113[6] (Mo.App. 1983). Moreover, in court-tried cases we, upon review, are obligated to sustain the appealed judgment unless we conclude it is against the weight of the evidence or erroneously applies or declares the law. Ere we may do so, we must possess a solid belief the judgment is wrong for the resolution by the trial court of conflicting evidence must be afforded due deference by us for that tribunal has leave to believe or disbelieve all, part or none of the testimony of any witness though it stands uncontra-

---

1. The balance check, along with the $1,700.00 deposit, came to a total of $3,468.46.

2. The relative minor discrepancies which may sometimes appear herein anent the date of events, and the dollar and cents figures used by the parties and those that may be stated by us, if any, are unimportant upon appeal as they are given no import by the parties as any such variances are not decisive of the true issues on appeal.

3. Statutory and rule references are to V.A.M.S. and Missouri Rules of Court, V.A.M.R.

4. Plaintiff's counsel on appeal is not the same as his trial lawyer.

dicted. *Wood v. Wood,* 709 S.W.2d 143, 147 (Mo.App.1986). Where, as in this and most all cases, conflicts in testimony exist, we assume the trial court believed only the testimony and evidence consistent with its judgment. *McComas v. Umlauf,* 641 S.W.2d 809, 812 (Mo.App.1982); *State ex rel. Hillhouse v. Hunter Raffety Elevator, Inc.,* 636 S.W.2d 400, 402[1] (Mo.App.1982); *McClelland v. Williamson,* 627 S.W.2d 94, 96[1, 2] (Mo.App.1982).

None of the parties on appeal shy from prolixity in penning the various segments of their briefs. Also, no party has undertaken to summarize the obvious reasons for the judgment. In substance the trial court patently concluded the exterior mahogany unit and display cabinets consisted of such substandard materials and workmanship as to be worthless. Consequently, the court allowed plaintiff no credit for such but did allow him $4,456.24 for the other materials and labor which it found acceptable. Thus if defendants were not to be charged for the substandard items and labor, they would not be entitled to total charged damages therefor. On the other hand, the court obviously concluded that defendants were entitled to $1,280.00 in damages representing, as the evidence attested, the cost of $640.00 in removing the defective millwork supplied by plaintiff and the cost of $640.00 in installing newly fabricated replacement millwork. Hence, the award to plaintiff on his petition of $4,456.24 in damages (less the $1,700.00 previously paid), and the award to defendants of $1,280.00 on their counterclaim.

In effect, plaintiff's first point relied on[5] is that the trial court erred in denying him recovery for the exterior mahogany unit and display cabinets because the therein claimed defects were not due to plaintiff's workmanship or installation in that (a) the defect to the door resulted from defendant's failure to preserve and protect it by preparing it and applying a finish coat, (b) the defect claimed to the shape of the exterior mahogany unit was due to defendant's template,[6] (c) the defects claimed to the display cabinets were due to the imperfection of defendants' walls and (d) the defects claimed regarding "the split trim and casing, the miter joints, the weather stripping, the stops for the glass inserts and the saw marks are de minimus [sic] and can be repaired for less than $300.00 in total."

■ In re plaintiff's contention the claimed exterior unit defects were due to defendant's failure to apply a protective coating thereto, etc., plaintiff erroneously argues in his brief that defendant's "evidence of alleged defects consisted solely of various photographs" which were admitted into evidence over plaintiff's objections that the pictures were inadmissible due to defendant's "failure to lay a proper foundation for them." We note initially that ordinarily an objection to evidence must specifically state the grounds on which it is based and that an objection where no foundation or proper foundation has been laid is too general to warrant sustentation. *Fuerst v. St. Louis Public Service Company,* 368 S.W.2d 550, 553[4] (Mo.App.1963); 88 C.J.S., *Trial* § 124 c, at p. 252 (1955). But more important and disturbing to us is the fact that plaintiff refers to the exhibits collectively with the unauthorized implication that all picture exhibits were objected to for the reason stated in the brief.

■ According to our calculations, defendant's picture exhibits numbered 24 in toto and when the trial court inquired of plaintiff's counsel as each was offered into evidence, that lawyer responded "No objection" to 17 of the proffered exhibits. As to three of the objected-to exhibits, plaintiff's own witness acknowledged they "fairly and accurately represented that portion of the

---

5. Apparently on the mistaken assumption that deviation in the size of type employed in penning the points from that used in writing the balance of his brief would add to the aesthetic quality of same, in disregard of the mandate of Rule 81.17, plaintiff's counsel has penned his points in type far smaller than pica.

6. As used here, "template" means a pattern used for testing accuracy of form in woodworking. Webster's New World Dictionary of the American Language 1500 (College ed. 1968).

door" showing the complained-of defects. It is little wonder, therefore, the court nisi overruled plaintiff's objection thereto "because a proper foundation has not been laid." The four remaining objected-to pictures were said by the identifying witness to accurately represent the workmanship flaw complained of by defendant and were admitted by the court over plaintiff's nonspecific objection that "no foundation laid, no testimony to tie when these pictures were taken."

We see no trial court error in admitting any of the picture exhibits and are most unappreciative of plaintiff's apparent representation, be it deliberate or otherwise, that all such exhibits were admitted over trial objections.

Plaintiff's contention in his point that defendant's damages to the exterior door unit resulted from defendant's failure to protect with a finish coat, was virtually ignored in the argument made relative thereto. At first blush from reading plaintiff's argument assertions that the court nisi found his services to be worthless and of no value, one is left with the impression plaintiff went totally uncompensated for his work. However, as noted in the fourth paragraph hereof, the plaintiff was credited with $4,456.24 for the craftsmanship furnished, which represented compensation for a large segment of the services rendered and which defendant acknowledged were completely satisfactory.

Albeit plaintiff's objections to a few of the photographs were not, strictly speaking, on the ground they were taken at times too remote to the date of installation to be accurate, for the sake of argument we will assume his objections that there was "no testimony to tie when these pictures were taken" were so intended. However, when defendant's witness testified that when he met with defendant and plaintiff's employee shortly after installation to discuss and view defendant's complaints, he pointed out to the employee all of the "problems that had been pictured and discussed here today." Thus the witness testified the complaints made to the employee were depicted in the illustrative pictures produced at trial. Whether photographs are sufficiently authenticated is primarily a question for the trial court. *Lustig v. U.M.C. Industries, Inc.,* 637 S.W.2d 55, 62[16–18] (Mo.App.1982). Such testimony, taken in conjunction with that of defendant's, was sufficient for the trial court to properly rule the photographs admissible to show the complained of deficiencies existing at and near the time of installation.

■ Plaintiff asserts in Point I (b), that defendant's complaints respecting the flat top shape of the exterior door was due to plaintiff's adherence to defendant's template and not plaintiff's error. This complaint is embodied in a most generally stated 21–line paragraph in plaintiff's brief wherein he argues the flat spot atop the otherwise oval-topped or arch-topped door resulted from his following a less than lifesize illustrative drawing proffered by defendant during discussions of the latter's desires. Though plaintiff's workman agreed that flat-top arch-type doors are rare and defendant denied this was intended, the existence of such a fault, vel non, is dependent upon the trial court's belief or disbelief of the conflicting testimony. In any event, the undenied existence of a flat area atop the otherwise arch-shaped door is relatively minor to the other more serious defects which defendant avowed occurred in the exterior mahogany unit manufactured and installed by plaintiff. Moreover, plaintiff cites no authority of any kind to hold defendant bound to and responsible for the template or to excuse plaintiff from preparing an oval-topped door with a flat section. Ordinarily when a point of error, as here, is unsupported with a citation of relevant authority and it is not claimed such omission is due to the fact the point is one of first impression, the point is deemed abandoned. *Wright v. Martin,* 674 S.W.2d 238, 242[8] (Mo.App.1984).

Plaintiff's assertion that defendant's dissatisfaction with the display cabinets stems from imperfections in defendant's home walls and not plaintiff's imperfect workmanship, tells only part of the story.

Though responsible therefor, plaintiff did not directly participate in the manufacturing and installation of the cabinets—neither did he testify. His son and another employee did this. Consequently when our opinion refers to plaintiff's asseverations, we are actually referring to the contentions penned in his brief and those voiced by his son or fellow employee who proffered the only testimony on plaintiff's behalf.

■ Contrary to plaintiff's claims regarding the walls in defendant's home, defendant testified that prior to and after the placement of the display cabinets he had placed a straight edge on the surfaces of the walls and checked them both horizontally and vertically and found them to be perfectly plumb and square. In addition, defendant offered evidence concerning the display cabinets that showed (a) gaps existed around them of ⅛th to ³⁄₁₆th of an inch which resulted because the wood used to construct the cabinets was about ⅛th of an inch or more wider at one end than the other, (b) that a 16 penny galvanized nail had been driven through a casing at one place, (c) that shims driven underneath the casing caused it to bow and caused a ⅜th of an inch gap between the wall and the casing of a display cabinet, and (d) the wood used in constructing the casing of the cabinet was of two different thicknesses causing the wider pieces to protrude further than the more narrow pieces. These defects were not related to the way the house was constructed or the place prepared therein for placement of the cabinets. Their existence was corroborated by four of defendant's picture exhibits which were admitted without objection. The resolution, of defendant's evidence just recounted and the opposed evidence presented by the plaintiff, depends upon the credibility of the witnesses and thus presents "a factual situation that upon review calls strongly for the application of the rule of due deference." *K–V Builders, Inc. v. Thomas,* 353 S.W.2d 130, 136 (Mo.App.1962).

■ In our consideration of the final segment of plaintiff's first point relied on we note he enumerates five workmanship complaints of defendant which plaintiff claims "are de minimus [sic] and can be repaired for less than $300.00 in total." Just why the claimed workmanship defects are "de minimus" and, if so, why this results in the judgment herein being erroneous is left for all to guess, ponder, and surmise. It is not sufficient for the point, as here, to simply say via conclusions the specified defects are "de minimus" without directing us to some testimony or evidence giving support thereto. *Montesano v. James,* 655 S.W.2d 137, 139[2] (Mo.App. 1983). Moreover, we are not obliged to peruse the argument part of plaintiff's brief or search the transcript to seek the meaning of a point relied on which amounts to nothing more than an abstract assertion. *Lee v. Rolla Speedway, Inc.,* 539 S.W.2d 627, 629–630[4] (Mo.App.1976); Rule 84.-04(d). Although by way of Rule 84.08(a) the violators of Rule 84.04(d) are now being given a second chance to do correctly that which they should have done in the first instance, a reviewing court, after making a voluntary in-depth examination of plaintiff's argument and the transcript, as we have done, is not compelled to write a detailed critique as to why defendant's some 21 or more tersely proven complaints of plaintiff's supposed craftsmanship are more than sufficient to overwhelm the five minor and inconsequential aspects of the case raised by plaintiff.

In his second point relied on plaintiff says the trial court erred in giving defendant $1,280.00 on his counterclaim because "it erroneously applied a diminution in value analysis, because the cost of repair is the correct measure of [defendant's] damages, the cost of repair is substantially less than the diminution in value, and judgment for diminution in value results in unreasonable economic waste."

The foregoing is predicated on plaintiff's wholly unexplained and absurd repeated assumption that defendant's claimed damages to the entry way and display cabinets are confined to the cost of their repair "for less than $300.00 in total." The total cost of the whole undertaking approximated

$8,700.00 and of this sum the court allowed plaintiff some $4,500.00 for the materials it found acceptable. In other words, work other than that performed on the entry way and display cabinets was performed, so the court found and defendant admitted, satisfactorily. In the event of substantial but defective performance, the owner is entitled to have the recovery of the contractor reduced by the sum that would reasonably be required to remedy the defects and make the structure conform to the plans and specifications. Differently stated, the owners are entitled to a credit of such sum as will reasonably compensate them for defects in the building due to unskillful labor or defective materials and for items omitted by plaintiff in the performance of the agreement. *Forsythe v. Starnes*, 554 S.W.2d 100, 109[10, 11] (Mo. App.1977).

■ Nonetheless, the owners may not recover the cost of reconstruction and completion if this would involve unreasonable economic waste, i.e., destruction of usable property. *Id.* at 109. As noted in *Rust & Martin, Inc. v. Ashby*, 671 S.W.2d 4, 7 (Mo.App.1984), "the damages for breach of contract in constructing a dwelling, not built in accordance with the plans and specifications, are the costs required to reconstruct it to make it to conform to such plans, since, unlike a commercial structure, a dwelling has esthetic value and must be constructed as the owner wants it, even though the finished dwelling may be just as good.... What is reasonable to be used in a commercial building may not be reasonable for an owner to tolerate in a residence."

It is rare that anything is constructed in such a faulty fashion that it cannot be used in any conceivable manner. Albeit the exterior door has been made to open and close, the other parts of the entry way are constructed to shield against the elements, and the display cabinets are capable of housing objects d'art, it would be most rare if anything could be so unserviceable that it could not be used in any fashion. However, defendants presented evidence which, if believed, illustrated their convictions that the entry way and cabinets had not been constructed and installed to their satisfaction nor as agreed to by plaintiff and that the end product detracted from the hoped-for beneficial aesthetic contribution to their home.

■ Defendants were not here awarded damages for what the trial court found to be totally worthless for their intended usages. The court simply did not charge defendants for the valueless items, but only awarded the cost of the removal thereof and the cost of again installing such items after they had been newly manufactured to the specification, desires and satisfaction of defendants. The point is denied.

Plaintiff's third point relied on is somewhat a rehash of his second. He claims the trial court erred in giving defendant $1,280.00 on the counterclaim because there was no substantial evidence to support such amount, because neither defendant nor his witness were qualified as experts in the appraisal of property, and there was no basis established for such valuation. We have already explained how the court nisi arrived at the $1,280.00 figure, i.e., the evidence was it would cost $640.00 to remove the defective items from defendant's property and an additional $640.00 to install the replacement items. Regarding plaintiff's complaint concerning his objections to the testimony of defendant's witness, we note such witness' testimony covers but ten pages in the transcript and that plaintiff voiced only a single objection thereto. Of course, as to such testimony of the witness that received no objections, consideration of plaintiff's complaints concerning such evidence is neither invoked nor justified. *Faught v. Washam*, 329 S.W.2d 588, 599[17] (Mo.1959). As to plaintiff's sole objection to the testimony of defendant's expert, it is enough to note that when the objected-to question was asked and overruled the witness, when asked if he had an opinion if the complained-of work done by plaintiff increased or decreased the value of defendant's house, answered "it decreases in value."

By reason of specialized experience, an expert witness is one who possesses superior knowledge of a subject about which persons who have no particular training are incapable of forming accurate opinions or deducing correct conclusions therefrom. The determination of an expert witness' qualification primarily rests in the sound discretion of the trial court and its decision in that respect will not be set aside in the absence of a showing of an abuse of discretion. *Eichelberger v. Barnes Hosp.*, 655 S.W.2d 699, 704[1][2] (Mo.App.1983). Without detailing the witness' complete and comprehensive recitation of his qualifications, we have no doubt he exposed himself as an expert and that the trial court did not abuse its discretion in permitting his testimony in light of plaintiff's utter lack of showing such permission would constitute an abuse. The point is denied.

■ As noted in the second paragraph of this opinion, the damages awarded plaintiff on his petition were awarded against defendant Clifford B. Glover only and that the petition was dismissed as to his wife, defendant Eunice H. Glover. We are confronted with the undisputed fact that plaintiff's petition named both Clifford B. Glover and Eunice H. Glover as parties defendant and that said defendants jointly answered the petition and jointly, for their counterclaim against plaintiff, alleged that because of plaintiff's "faulty and unworkmanlike workmanship" they had been damaged and collectively prayed for a judgment against plaintiff. If we are to accept Judge Clemens' critique of *Freeman Contracting Company v. Lefferdink*, 419 S.W.2d 266 (Mo.App.1967), as expressed in *Kaufmann v. Krahling*, 519 S.W.2d 29, 32 (Mo.App.1975), which we do, where the wife, as here, joins her husband in counterclaiming against the contractor for damages, she is equally liable on the contractor's [plaintiff's] claim against her and her husband.

"In the interest of laying this litigation to rest and settling the rights of the parties, we should, if possible enter such judgment as the trial court should have entered." *Oldfield v. Oldfield*, 688 S.W.2d 778, 781[4] (Mo.App.1985); Rule 84.14. To that end, it is ordered and adjudged that there be a deletion from the present judgment of the trial court those portions thereof which read: "As to Plaintiff's Petition, the Court finds the issues thereon in favor of Plaintiff and against Defendant Clifford B. Glover and assesses Plaintiff's damages in the sum of $2,756.24 with interest thereon from and after March 30, 1983, and dismisses said Petition as to Defendants Eunice H. Glover and Charles McElyea, Trustee.... IT IS THEREFORE Ordered, Adjudged and Decreed that Judgment on the Petition herein is hereby granted in favor of Plaintiff and against Defendant Clifford B. Glover in the amount of $2,756.24 together with interest thereon from and after March 30, 1983, and that the Petition is dismissed as to Defendants Eunice H. Glover and Charles McElyea, Trustee."

It is further ordered and adjudged that in lieu thereof, those portions of the judgment deleted, *supra*, shall be changed and amended so as to read: "As to Plaintiff's Petition, the Court finds the issues thereon in favor of Plaintiff and against Defendants Clifford B. Glover and Eunice H. Glover and assesses Plaintiff's damages in the sum of $2,756.24 with interest thereon from and after March 30, 1983, and dismisses said Petition as to Defendant Charles McElyea, Trustee.... IT IS THEREFORE Ordered, Adjudged and Decreed that Judgment on the Petition is hereby granted in favor of Plaintiff and against Defendants Clifford B. Glover and Eunice H. Glover in the amount of $2,756.24 together with interest thereon from and after March 30, 1983, and that the Petition is dismissed as to Defendant Charles McElyea, Trustee." In all other respects, with the lone exception of the changes and amendments just noted, the judgment stands affirmed.

GREENE, J., concurs.

FLANIGAN, J., concurs in result only.