**Nick and Donna STOM, Plaintiffs–Appellants,**

v.

**ST. CLAIR CORPORATION, Defendant–Respondent.**

No. 26198.

Missouri Court of Appeals, Southern District, Division One.

Jan. 26, 2005.

Andrew J. Hardwick, Gregory D. Williams, Sunrise Beach, for appellant.

Daniel C. Mizell, Lake Ozark, for respondent.

PHILLIP R. GARRISON, Presiding Judge.

Nick and Donna Stom ("Appellants") appeal from the judgment of the Circuit Court of Camden County finding in their favor on a breach of contract claim against St. Clair Corporation ("Respondent") but awarding them no damages. We reverse and remand.

Appellants contracted with Respondent to construct a sunroom on their home in Sunrise Beach, Missouri. Respondent completed construction and was paid $9,250. Appellants were dissatisfied with the windows in the sunroom because they had wanted double pane thermal windows instead of the single pane windows that were installed. The contract between Appellants and Respondent, however, had not called for double pane thermal windows. Nonetheless, when Appellants informed Respondent of their complaint, Respondent returned to their home and replaced the windows with double pane thermal windows, using the same frames that were used for the single pane windows.

After the double pane windows were installed, Appellants complained of water leakage in the sunroom when wind blew rain against the windows. Appellant Nick Stom ("Nick") testified at trial that the windows were not sitting squarely in the frames, causing water leakage. Nick stated that the windows were "cocked" and that Mike McCarroll ("McCarroll"), Respondent's production supervisor, told him that was because the adjusting screws in the windows were stripped. Appellants notified Respondent about the leakage problem, but when they received no response, they contracted with Harold

Haines, Inc. ("Haines") to remedy the problem. Haines's work consisted of replacing the windows and the wall pieces which held the tracking hardware for the window frames, for which Appellants paid a total contract price of $7,895.27. Nick testified that the sunroom was basically the same sunroom after Haines's work as that which Appellants had ordered from Respondent, but the evidence also indicated that after Haines's work the sunroom contained more windows than had been installed by Respondent.

Appellants filed suit and were granted a default judgment against Respondent. Respondent filed a motion to set aside the judgment and a request to file responsive pleadings out of time. It appears that the trial court granted this motion, although the record does not contain any responsive pleadings that may have been filed by Respondent. After a bench trial, the trial court entered judgment for the plaintiff stating,

> [T]he Court finds the issue of liability in favor of [Appellants]. As to the issue of damages the Court finds that [Appellants] have failed to prove damages in that no evidence was introduced re diminished value only cost of repair. Therefore, the Court enters judgment for [Appellants] as to liability. Awards damages of zero. Costs of this action assessed to [Respondent]. Clerk to send copy of this docket sheet to Attorneys of record. [Signed/Bruce E. Colyer Judge.] Also all exhibits to be returned to attorneys. BEC.

Appellants' motion for new trial was overruled. This appeal followed.

The evidence indicated that McCarroll oversaw the construction of a standard sunroom at Appellants' home. He testified that although Respondent only sells

one type of sunroom, individual sunrooms differ because of the number of doors, the roof, and the color. Respondent accommodated Appellants' request for a different door and also returned and put in the double pane windows as requested by Appellants. Although McCarroll said that the sunrooms are designed to be more of an enclosed patio and are not really designed to be completely waterproof, he admitted that it is not normal for water to "pool up on the inside of the sunroom after a rain." By way of explanation of Appellants' problems, McCarroll stated that the double pane windows were heavier than the single pane windows usually used by Respondent and that this could affect the tracking that held the windows. Furthermore, the heavier windows could cause the window adjusting screws to strip and this would make it difficult to keep the window square in the frame and watertight. He testified, however, that the least invasive way of fixing the problem of stripped screws, if that was the cause of the window leakage, would be to replace the screws at a cost of 20 cents each. It would not be necessary to replace all of the windows, which Appellants did at a cost of more than $7,000. McCarroll concluded that the sunroom completed by Haines was not substantially the same sunroom as that constructed by Respondent.

Appellants present one point on appeal, claiming that the trial court erred in finding zero damages for Appellants "because the burden of presenting evidence [that] the cost of repairing or replacing property is disproportionate to the diminution in value of property is on the contractor," and the trial court placed this burden on Appellants. In support of their contention, Appellants cite *Ken Cucchi Const., Inc. v. O'Keefe,* 973 S.W.2d 520, 527 (Mo. App. E.D.1998), for the proposition that once a landowner presents evidence of the cost of repair or replacement, the contrac-

tor then has the burden of presenting evidence that this cost is disproportionate to the diminution in value of the property. Appellants claim that they produced evidence of cost of repair or replacement, and that Respondent did not produce any evidence regarding diminished value. Therefore, Appellants contend that they are entitled to the cost of repair or replacement as their damages, in the amount of $7,895.27.

Respondent agrees that *Ken Cucchi Const., Inc.* is factually similar to the present case and that it presents the general rule for calculating damages in a breach of contract case. Respondent contends, however, that in this case it substantially complied with the contract and that in such instances, the proper measure of damages is an amount that "will reasonably compensate [Appellants] for defects in the building due to unskillful labor or defective materials and for items omitted by [Respondent] in the performance of the agreement." *Mathis v. Glover,* 714 S.W.2d 222, 228 (Mo.App. S.D.1986). Appellants alleged that the double pane windows were "cocked" due to a stripped adjusting screw, allowing water to get blown into the sunroom when it rained. McCarroll testified that the least invasive way to fix the problem was to replace the adjusting screws in the windows at a cost of 20 cents each. Furthermore, Respondent contends that Appellants failed to produce evidence that replacement of the windows was necessary or to contradict McCarroll's testimony on the cost of repairing the stripped screws. According to Respondent, it would be unconscionable to allow Appellants to recover their cost of reconstruction "if this would involve unreasonable economic waste" when it could be "fixed for a de minimus [sic] sum."

We will sustain the judgment of the trial court in a court-tried case unless

there is no substantial evidence to support its decision, its judgment is against the weight of the evidence, or it erroneously declares or applies the law. *Pruitt v. Pruitt,* 94 S.W.3d 429, 431 (Mo.App. E.D. 2003). "All evidence and permissible inferences therefrom are considered in the light most favorable to the trial court's decision and all contrary evidence and inferences are disregarded." *Id.*

■ Neither party requested that the trial court make specific findings of fact and conclusions of law. In such situations, "all issues of fact on which no specific findings were made are considered to have been found in accordance with the judgment." *Ankrom v. Roberts,* 126 S.W.3d 798, 800 (Mo.App. S.D.2004). The trial court's judgment will be sustained " 'on any reasonable theory within the pleadings and supported by the evidence.' " *State ex rel. E.A. Martin Machinery Co. v. Line One, Inc.,* 111 S.W.3d 924, 927 (Mo.App. S.D.2003) (quoting *Schaefer v. Rivers,* 965 S.W.2d 954, 956 (Mo.App. S.D.1998)). Here, the trial court's judgment contained no specific findings of fact, only determinations as to liability and that not enough evidence had been produced to award damages because Appellants did not produce evidence of diminished value.

■ Because the trial court found the issue of liability in favor of Appellants, it must have found that Respondent breached its contract with Appellants. The appropriate measure of damages is the only issue on appeal. As indicated, Respondent asserts this is a case of substantial compliance with the contract, and that the measure of damages should therefore be an amount to compensate for the defects in the building due to unskillful labor or defective materials. *Mathis,* 714 S.W.2d at 228. In situations where there is substantial but defective performance by a contractor, there are two standards for the measure of damages: cost of repair or replacement, and diminution of value. *County Asphalt Paving Co. v. 1861 Group, Ltd.,* 908 S.W.2d 184, 186 (Mo.App. E.D. 1995); *White River Dev. Co. v. Meco Sys., Inc.,* 806 S.W.2d 735, 741 (Mo.App. S.D. 1991). The particular facts and circumstances of the case determine which measure of damages is appropriate. *McLane v. Wal–Mart Stores, Inc.,* 10 S.W.3d 602, 606 (Mo.App. E.D.2000).

■ "The general rule in calculating damages for a breach of contract is that the non-breaching party is entitled to the cost of repairing or replacing the defective work." *Ken Cucchi Const., Inc.,* 973 S.W.2d at 527. But, when the cost of repair or replacement would constitute an economic waste, then the proper measure of damages is the diminished value of the property because of the defective work. *Id.; Dubinsky v. U.S. Elevator Corp.,* 22 S.W.3d 747, 751–52 (Mo.App. E.D.2000). Economic waste exists when the cost of repair or replacement of the defective property is disproportionate to the diminution in value of the property. *Ken Cucchi Const., Inc.,* 973 S.W.2d at 527. When the homeowner presents evidence of the cost of repair or replacement, "the contractor has the burden of presenting evidence that the cost of repairing or replacing the property is disproportionate to the diminution in value of the property." *Id.; see Erney v. Freeman,* 84 S.W.3d 529, 536 (Mo.App. S.D.2002). If the contractor fails to present any evidence of the value of the property, it fails to meet its burden of production. *Ken Cucchi Const., Inc.,* 973 S.W.2d at 527.

■ The trial court, in its judgment, appears to have favored the diminished value rule for determining damages over the general rule of cost of repair or replacement when it said, "As to the issue of

damages the Court finds that [Appellants] have failed to prove damages in that no evidence was introduced re diminished value only cost of repair." Both Appellants and Respondent presented evidence of cost of repair, albeit wildly different sums of $7,895.27 and approximately 20 cents per window. Neither party presented any evidence on diminished value. Under the *Ken Cucchi Const., Inc.* case, the trial court erred in applying the law by improperly placing the burden of production of evidence as to diminished value on Appellants and not Respondent after Appellants produced evidence of cost of repair or replacement. Furthermore, the trial court is not required to apply the diminished value measure of damages where the contractor does not meet its burden of production. *See Id.* at 527. In such situations, the appellate courts have found that the cost of repair or replacement is the appropriate damages measure, when homeowners have produced evidence of such cost of repair or replacement. *See Id.*

 Since both parties presented evidence on the cost of repair or replacement, "[i]t is up to the trier of fact to judge the credibility and weight to be given to the evidence at trial." *Walker v. Hanke,* 992 S.W.2d 925, 932 (Mo.App. W.D.1999). The trial court, in its judgment as to damages, found only that Appellants had produced evidence of cost of replacement or repair. Respondent attempted to rebut this evidence by presenting evidence that it would cost 20 cents to repair each stripped screw. Since the trial court incorrectly found that Appellants were required to introduce evidence of diminished value, we cannot, from our reading of the judgment, make a determination as to whose evidence on cost of repair the trial court might have found more credible. We will not invade the trial court's province, as the trier of fact, to determine the weight and credibility of the evidence as to damages. We are therefore forced to reverse the trial court's judgment as to damages and remand for a factual determination of the appropriate cost of repair or replacement consistent with this opinion. The trial court's judgment is otherwise affirmed.

PREWITT, J., and RAHMEYER, J., concur.