**Larry and Paula CASON, and Donnie and Kelly Hatton, Plaintiffs–Respondents,**

**v.**

**James KING, Defendant–Appellant.**

**No. SD 30183.**

Missouri Court of Appeals,
Southern District,
Division One.

Nov. 18, 2010.

---

David Simpson, St. James, MO, for Appellant.

Shelley L. Woodward, Cuba, MO, for Respondents.

DON E. BURRELL, Judge.

James King ("Defendant") timely appeals a civil judgment for monetary damages entered against him in favor of plaintiffs Larry and Paula Cason ("the Casons") and Donnie and Kelly Hatton ("the Hattons") (collectively, "Plaintiffs") after a bench trial. The suit arose out of work Defendant performed on two septic systems. The judgment awarded the Casons $3,500, representing the cost to repair their defective septic system, plus $5,000 for the loss of the full use of their property.[1] The judgment awarded the Hattons $4,900 for the cost to repair their septic system.

Defendant presents one point on appeal, asserting the trial court erred in awarding damages "because the evidence was insufficient to prove damages in that neither [set of] Plaintiff[s] produced any evidence regarding diminution in land value and the court therefore had no basis for awarding repair costs[.]" In the same point, Defendant also asserts that Mr. Cason failed to "produce any evidence supporting the $5,000 amount that the court awarded him for loss of use of his lake, and [ ] that the proper measure for damages resulting from the loss of use of his lake is either the diminution in value or repair costs."

Finding merit in Defendant's claim that the evidence was insufficient to support the amount of the trial court's loss of use award to the Casons, we reverse that portion of its judgment, affirm the balance, and remand the matter for a new trial on the limited issue of damages suffered by the Casons as a result of their lake being contaminated by the defective septic system installed by Defendant.

## Facts

In a court-tried case, "[a]ll evidence and permissible inferences therefrom are

---

1. Judgment was granted in favor of the Casons and Hattons as to counts one and five of the amended petition. Counts one and five stated claims for breach of contract. A directed verdict in favor of Defendant was granted at the close of Plaintiffs' evidence as to the remaining counts alleging breach of warranty of merchantability, breach of warranty as to fitness for a particular use, and fraudulent concealment.

considered in the light most favorable to the trial court's decision, and all contrary evidence and inferences are disregarded." *Pruitt v. Pruitt,* 94 S.W.3d 429, 431 (Mo. App. E.D.2003). To his credit, Defendant agrees that "[t]he evidence in this case viewed in a light most favorable to [Plaintiffs] supported the trial court's finding of contract and breach, but there was insufficient evidence of damages." We summarize the facts of this case with that standard and Defendant's concession in mind.

The Casons lived on a 100–acre cattle farm in Owensville. The Hattons, who were the Casons' daughter and son-in-law, owned a house on neighboring land. In July 2000, Mr. Cason was adding a seven-acre lake to his property and hired Defendant to add a new ground field to his existing septic system. Mr. Cason told Defendant "that [he] was installing the septic field because [he] was building a new lake and [he] didn't want the raw sewage draining into the lake." Defendant installed approximately 220 feet of pipe to create the new ground field, and Mr. Cason paid Defendant $1,500 for this work. "A few weeks after the installation[,] after [Defendant] had left, [the system] started leaking sewage to the surface and smelling."

Mr. Cason contacted Defendant, who attempted repairs. Over the next several years, problems with sewage seeping to the surface of the ground continued. Defendant's additional attempts to fix the problems were unsuccessful, and the instant lawsuit was filed in May 2005. In June 2006, Mr. Cason had the septic system replaced by a new contractor for $3,500. The replacement system was rerouted to a new field, additional pipe was used, and the system was "slightly larger" than the prior system. After the new system was installed, no more leaks occurred.

Mr. Cason planned on using his new lake for recreation and to water his cattle. The lake was not finished until after the septic system started leaking. Sewage seeped into the lake from a cesspool that resulted from the leaking system. Additional sewage ran into the lake whenever Defendant would open the system in furtherance of his attempts to repair it. The odor from the leaking sewage on the Casons' property was so bad during these times that the family and their guests could not remain outside. The water in the lake also began to emit a foul odor, and Mr. Cason could not use it to water his cattle. Children did swim in the lake, although they had to bathe afterwards, and the Casons generally did not keep "very many" fish caught in the lake.

The lake remained malodorous after the replacement system was installed. The lake was not drained after the sewage leaks had occurred, and Mr. Cason did not attempt to purify the water or otherwise clean the lake. Mr. Cason testified that "[t]he lake cost well over $10,000 to build[.]" Mr. Cason requested "maybe $5,000" as damages for the Casons' loss of use of the lake. No evidence, other than the original cost to build the lake, was offered as support for the amount requested.

Defendant installed a new septic system for the Hattons' home shortly before he installed the ground field for the Casons. Mr. Hatton paid Defendant $3,000 for the septic system. Approximately four-to-six months after the system was installed, Mr. Hatton began to notice sewage leaching up in his yard. Mr. Hatton called Defendant about it. Defendant came out to look at it, but did not make any repairs. Defendant suggested that perhaps Mr. Hatton had run over the system and broken a pipe.

Mr. Hatton then had another contractor inspect the system. That contractor did

not find a broken pipe. He repaired the Hattons' septic system by installing both a pump station and a new ground field using additional pipe. The cost of the replacement system was $4,900.00.

## Standard of Review

■ The judgment of the trial court must be affirmed "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). "Substantial evidence is competent evidence which, if believed, would have probative force upon the issues." *State ex rel. Gannett Outdoor Co. of Kansas City v. City of Lee's Summit*, 957 S.W.2d 416, 419 (Mo.App. W.D.1997) (citing *Citizens for Rural Preservation, Inc. v. Robinett*, 648 S.W.2d 117, 124 (Mo.App. W.D.1982)). In reviewing the evidence presented at trial, we "give due regard to the opportunity of the trial court to have judged the credibility of witnesses[.]" Rule 84.13(d)(2).[2]

## Analysis

Defendant claims the trial court misapplied the law and that its judgment is not supported by substantial evidence. At the outset, we note that Defendant's point relied on improperly asserts more than one claim of error. It states:

> The trial court erred in awarding the amount of damages to both [the Casons and the Hattons] because the evidence was insufficient to prove damages in that neither [the Casons nor the Hattons] produced any evidence regarding diminution in land value and the court therefore had no basis for awarding repair costs, in that [Mr. Cason] did not produce any evidence supporting the $5,000 amount that the court awarded

him for loss of use of his lake, and that the proper measure for damages resulting from the loss of use of his lake is either the diminution in value or repair costs.

A point relied on must identify a single trial court ruling that is challenged, state concisely the applicable legal principle(s) supporting that challenge, then summarize how the legal reason(s) stated apply to the facts of the case. Rule 84.04(d). Defendant's single point attempts to challenge the trial court's ruling on cost of repair damages as to both the Casons and the Hattons as well as its loss of use award to the Casons. A point that groups together multiple contentions of error does not satisfy Rule 84.04. *Martin v. Reed*, 147 S.W.3d 860, 863 (Mo.App. S.D.2004).

From the argument section of Defendant's brief, we discern that his primary complaints are: 1) evidence of diminution in value must always be produced before evidence of cost of repair can be received and Plaintiffs presented no such evidence; and 2) insufficient evidence was presented as to the damages suffered by the Casons due to the loss of use of their lake. Because there is a preference that appeals be resolved on the merits whenever possible, and the deficiency of Defendant's point does not substantially impede appellate review, we will address his claims of error *ex gratia*. *See Comp & Soft, Inc. v. AT & T Corp.*, 252 S.W.3d 189, 194 (Mo.App. E.D. 2008) (noting the policy preference and granting *ex gratia* review when the "gist" of the appellant's arguments could be discerned).

### *Actual Damages Based on Cost of Repair*

■ Defendant argues the trial court misapplied the law by awarding cost of

---

**2.** Unless otherwise noted, all rule references are to Missouri Court Rules (2010).

repair damages without first determining that the cost of repair was less than any diminution to the value of the properties caused by his breach of contract. The trial court's judgment stated:

The court, having taken the matter under advisement, now finds the issues contained in Counts I [the Casons' breach of contract claim] and V [the Hattons' breach of contract claim] in favor of the Plaintiffs and against the Defendant. The [c]ourt finds that there are due to Plaintiffs from the Defendant the following amounts:

To [the Casons]:

Cost of Repair in the amount of Three Thousand Five Hundred Dollars ($3500.00) and for Loss of Use of the property and pond the amount of Five Thousand Dollars ($5000.00) for a total amount of Eight Thousand Five Hundred Dollars ($8500.00).

To [the Hattons]:

Cost of Repair in the amount of Four Thousand Nine Hundred Dollars ($4900.00).

 "A plaintiff claiming a breach of contract has available and need not choose between three types of damages—actual, consequential, and benefit-of-the-bargain— as such damages are not necessarily inconsistent with one another; a plaintiff may not, however, be made whole more than once." *Catroppa v. Metal Bldg. Supply, Inc.*, 267 S.W.3d 812, 817 (Mo.App. S.D. 2008). Actual damages are intended to compensate for the loss sustained and are the reasonable cost of conforming the subject of the contract to the specifications of the contract. *Id.* at 818. For instance, in *Catroppa*, plaintiff contracted with defendant to build an outdoor stage with a roof, but the roof leaked because it was not built

as designed. *Id.* at 815. Plaintiff's damages were held to be "the reasonable cost of conforming the stage roof to the contract specifications."[3] *Id.* at 818. Here, the Casons and Hattons presented evidence that it cost them $3,500 and $4,900, respectively, to have new contractors replace their faulty septic systems with ones that did not allow sewage to leach to the surface.

Damages resulting from a faulty septic system were considered in the context of a real estate contract in *Kelsey v. Nathey*, 869 S.W.2d 213 (Mo.App. W.D.1993). In *Kelsey*, defendant argued that plaintiff failed to make a sufficient case as to damages because plaintiff proved the cost of repair but offered no proof as to the property's diminution in value. *Id.* at 218. On review, the Western District rejected this argument, and upheld the damage award for breach of contract in the amount necessary to fix the septic system. *Id.*

Defendant asserts here the same argument that failed in *Kelsey*, but cites other cases, *Plunk v. Hedrick Concrete Prod. Corp.*, 870 S.W.2d 942, 944 (Mo.App. S.D. 1994); *Sheridan v. Sunset Pools of St. Louis, Inc.*, 750 S.W.2d 639, 641–42 (Mo. App. E.D.1988); *Lewis v. Lawless Homes, Inc.*, 984 S.W.2d 583, 586 (Mo.App. E.D. 1999); and *King v. City of Independence*, 64 S.W.3d 335, 342 (Mo.App. W.D.2002), *overruled on other grounds by George Ward Builders, Inc. v. City of Lee's Summit*, 157 S.W.3d 644, 650 (Mo.App. W.D. 2004), as supporting a general rule that damages are determined by the diminution of value test except when the cost to restore the property is less than the diminution in value.

In another case cited by Defendant, *Evans v. Werle*, 31 S.W.3d 489 (Mo.App.

---

**3.** The plaintiff in *Catroppa* failed to prove actual damages because he only offered proof of what it originally cost to build the stage. *Id.* at 818.

W.D.2000), a case decided after *Kelsey,* the Western District stated that "[a] court [ ] cannot apply cost of repair damages until after it hears evidence of value." *Id.* at 492. Based on the cases he cites, Defendant asserts it is reversible error for a trial court to award cost of repair damages when no evidence of diminution in value has been presented.

Just what rule of law the trial court should have applied has not been consistently expressed in the existing case law. Of the cases cited by Defendant, *Evans* is perhaps the most challenging to reconcile with other breach of contract cases. In *Evans,* the plaintiffs proved that the roof installed by the defendant leaked and regularly lost shingles during storms. 31 S.W.3d at 490–91. The plaintiffs sued based on an express warranty contained in the contract. *Id.* at 491. The proof of damages offered by one of the plaintiffs consisted of her hearsay statements regarding an average cost to repair the roof based upon various estimates she had obtained. *Id.* at 492. The defendant objected to the testimony at trial, and the reviewing court found that the statements should not have been received into evidence. *Id.* Without plaintiffs' hearsay evidence, there was no proof of any type of damages. *Id.* The defendant had asserted diminution in value as the proper method of determining damages, and the court stated:

> Even if [one of the plaintiff]'s testimony was not hearsay, it would have been necessary for [plaintiffs] to first provide evidence of the diminution in value of their home due to the roof damage. "In real property cases, courts generally utilize the 'diminution in value' test, turning only to the 'cost of repair' test when it constitutes a lower amount of recovery." *Business Men's Assur. Co. of America v. Graham,* 891 S.W.2d 438, 450 (Mo.App.1994), *affirmed after re-*

*mand and transfer* 984 S.W.2d 501 (Mo. banc 1999). "In defective construction cases, on the other hand, the 'cost of repair' test is favored, so that courts normally determine the damages by assessing the cost of correcting the defects or supplying the omissions." *Id.* A court, however, cannot apply cost of repair damages until after it hears evidence of value. *Flora v. Amega Mobile Home Sales, Inc.,* 958 S.W.2d 322, 324 (Mo.App.1998). Without evidence of the cost of repair of the roof or the diminution in value of their home, [plaintiffs] did not provide sufficient evidence of damages, and in turn, did not make a submissible case for breach of contract. Their claim, however, does give rise to nominal damages.

*Id.* at 492–93.

In *Plunk,* a case involving damages resulting from a breach of an implied warranty of merchantability regarding bricks installed on a house, the homeowner's testimony as to diminution in value was held sufficient. 870 S.W.2d at 943–44. The court stated that "[i]n cases involving a breach of implied warranty, the general measure of damages is the lower of the cost of repair or diminution in value *unless the facts require a different standard.*" *Id.* at 944 (emphasis added).

In *Sheridan,* the court reversed and remanded a judgment based on the cost to replace an in-ground swimming pool after the defendant negligently drained it because "no evidence of diminution in value was presented to the trial court." 750 S.W.2d at 642.

In *Lewis,* a backhoe was negligently damaged, but "there was no evidence of the monetary diminution in value of the backhoe to compare with the cost of repairs." 984 S.W.2d at 586. The case was

reversed and remanded on the issue of damages. *Id.* at 587.

In *King,* a house was damaged by sewage that backed up from a city's sanitation system, and the owner was awarded damages caused by the nuisance.[4] 64 S.W.3d at 340. The defendant objected when the owner was asked to testify as to what loss in value her home had suffered as a result of the backup. *Id.* at 341. The objection was overruled, and no other evidence as to loss of value was received.[5] *Id.* at 342. In discussing the necessity of presenting evidence on diminution in value, the court acknowledged that an exception to the rule applies if the loss is small when compared to the total size and value of the real estate involved such that the injury may easily be repaired. *Id.* at 340. In such situations, the cost of repair alone may properly be used as a measure of damages. *Id.*

Plaintiffs assert it is also permissible to rely on the cost of repair alone when the defendant does not inject the issue of economic waste, citing *Trident Group, LLC v. Mississippi Valley Roofing, Inc.,* 279 S.W.3d 192, 200 (Mo.App. E.D.2009).

In *Trident,* damages were awarded against defendant based on breach of contract. *Id.* at 197. The defendant complained that the trial court should not have excluded evidence obtained on the eve of trial with a subpoena *duces tecum.* The excluded evidence would have established that there was no diminution in value to two buildings that had leaky roofs installed by defendant. *Id.* at 200. The court rejected this argument, stating:

Even assuming the evidence sought by the subpoena would have shown a lack of diminution in value to the real estate, Defendant failed to present the requisite evidence of economic waste in order to make diminution in value the proper measure of damages. Unless Defendant presented evidence that the cost of repair or replacement would constitute economic waste, the proper measure of damages could not have been the diminished value of the property due to the defective work. *Dubinsky v. United States Elevator Corp.,* 22 S.W.3d 747, 751–52 (Mo.App. E.D.2000) (proper measure of damages in a breach of construction contract is cost of repair); *see also McLane v. Wal–Mart Stores, Inc.,* 10 S.W.3d 602, 605 (Mo.App. E.D.2000).

*Id.*

In *Dubinsky v. United States Elevator Corp.,* 22 S.W.3d 747 (Mo.App. E.D.2000), plaintiffs had a contract with defendant to maintain, repair and replace elevators in plaintiffs' historic building. *Id.* at 749. A dispute developed over defendant's responsibility to repair or replace certain parts in the elevators; the contract was terminated; plaintiffs had repairs made to one, but not all of its elevators; and the subsequent lawsuit resulted in a jury verdict in favor of plaintiffs. *Id.* at 750–51. Defendant appealed, asserting "plaintiffs failed to establish damages in that they admittedly suffered no diminution of value." *Id.* at 751. The court acknowledged the general rule regarding diminution in value for cases involving damage to real property, along with the exception that applies when

---

4. A claim against a public entity with condemning authority based on a theory of nuisance (distinguished from an inverse-condemnation action) is no longer viable. *George Ward Builders, Inc. v. City of Lee's Summit,* 157 S.W.3d 644, 650 and n. 3 (Mo.App. W.D. 2004).

5. The loss may also have been based on permanent, not temporary damages. The case was remanded for a new trial on the issue of damages. *Id.* at 342.

the damage is small in comparison to the overall value of the property, then stated:

> However, the general rule in calculating damages for a breach of contract is that the non-breaching party is entitled to the cost of repairing or replacing the defective work. *Ken Cucchi Construction, Inc., v. O'Keefe,* 973 S.W.2d 520, 527 (Mo.App. E.D.1998).[6] However, if the cost of repair or replacement would constitute an economic waste, then the proper measure of damages is the diminished value of the property because of the defective work.

*Id.* at 751–52. The court further noted that it is the responsibility of the defendant to inject the issue of economic waste.

> Once the landowner presents evidence on the cost of repair or replacement, the contractor has the burden of presenting evidence that the cost of repairing or replacing the property is disproportionate to the diminution in value of the property and if the contractor fails to present any evidence on the diminution of value of the property it fails to meet its burden of production. The rationale for the general rule in favor of cost of repairs recovery is based on the purpose of damages in a contract action, which is to restore a plaintiff to the position plaintiff would have been in if the contract had not been breached, rather than to place plaintiff in a better position.

*Id.* at 752 (internal citation omitted).

In another case cited by Plaintiffs, homeowners sued for damages for breach of contract when windows in a sunroom installed by defendant leaked during storms. *Stom,* 153 S.W.3d at 362. The trial court found in favor of the homeowners on liability but awarded no damages because "no evidence was introduced re[garding] diminished value[—]only cost of repair." *Id.* We reversed, stating:

> "The general rule in calculating damages for a breach of contract is that the non-breaching party is entitled to the cost of repairing or replacing the defective work." *Ken Cucchi Const., Inc. v. O'Keefe,* 973 S.W.2d at 527. But, when the cost of repair or replacement would constitute an economic waste, then the proper measure of damages is the diminished value of the property because of the defective work. *Id.; Dubinsky v. U.S. Elevator Corp.,* 22 S.W.3d 747, 751–52 (Mo.App. E.D.2000). Economic waste exists when the cost of repair or replacement of the defective property is disproportionate to the diminution in value of the property. *Ken Cucchi Const., Inc.,* 973 S.W.2d at 527. When the homeowner presents evidence of the cost of repair or replacement, "the contractor has the burden of presenting evidence that the cost of repairing or replacing the property is disproportionate to the diminution in value of the property." *Id.; see Erney v. Freeman,* 84 S.W.3d 529, 536 (Mo.App. S.D. 2002).[7] If the contractor fails to present any evidence of the value of the property, it fails to meet its burden of

---

6. *Ken Cucchi Constr.* involved a claim and cross-claim between a homeowner and a contractor based on a contract to rebuild a house after the original was destroyed by fire. 973 S.W.2d at 522. As to the defective roof installed by the contractor, the homeowner proved the cost to replace the roof, and the contractor insisted that diminution in value should have been used to determine the homeowner's damages. *Id.* at 527.

7. In *Erney,* homeowners sued a contractor for breach of contract involving a botched basement remodel. 84 S.W.3d at 531. The court held that the contractor had the "burden to present evidence that the cost of repair method is disproportionate to the diminution in value, and he presented no such evidence." *Id.* at 536.

production. *Ken Cucchi Const., Inc.*, 973 S.W.2d at 527.

*Id.* at 364. We concluded that "the trial court erred in applying the law by improperly placing the burden of production of evidence as to diminished value on [plaintiffs] and not [defendant] after [plaintiffs] produced evidence of cost of repair or replacement" and remanded the case on the issue of damages. *Id.* at 365.

In the instant case, the trial court found in favor of the Casons and Hattons on the counts that alleged breach of contract. With the exception of *Evans*, the cases cited by Defendant and those cited by Plaintiffs may be distinguished based on the cause of action asserted by the plaintiff.[8] Despite the language in *Evans* requiring evidence of value as a prerequisite to any consideration of cost of repair in a breach of contract case, we do not believe it governs the case at bar for two reasons. First, the statement is *dicta* as no proper proof of *any* type of damages was presented. 31 S.W.3d at 492. Second, even if it had been the basis for the court's decision, it would be in conflict with the better

reasoned and more workable approach set forth in *Trident, Stom, Erney, Dubinsky, Ken Cucchi Constr., Inc.*, and *Kelsey*. Applying the rule as announced in those cases, Plaintiffs were not obligated to present any evidence of diminution in value unless and until Defendant presented "evidence that the cost of repairing or replacing the property [was] disproportionate to the diminution in value of the property[.]" *Dubinsky*, 22 S.W.3d at 752. Defendant presented no such evidence. As a result, the trial court did not misapply the law in determining Plaintiffs' actual damages based solely on their evidence of the costs of repair or replacement.[9] To the extent that Defendant's point challenges the trial court's actual damages awards to Plaintiffs based on the cost of repair, it is denied.

*Consequential Damages for Loss of Use*

Defendant further argues that because there was no evidence of diminution in value, "the trial court also committed error by awarding [Mr. Cason] $5,000 in damages for the 'loss of use' of his lake."

---

8. As indicated earlier in the discussion of these cases, the damages were based on: breach of implied warranty of merchantability in *Plunk v. Hedrick Concrete Prod. Corp.*, 870 S.W.2d 942, 944 (Mo.App. S.D.1994); negligence in *Sheridan v. Sunset Pools of St. Louis, Inc.*, 750 S.W.2d 639, 642 (Mo.App. E.D. 1988); negligence in *Lewis v. Lawless Homes, Inc.*, 984 S.W.2d 583, 586 (Mo.App. E.D. 1999); and, nuisance in *King v. City of Independence*, 64 S.W.3d 335, 340 (Mo.App. W.D. 2002).

9. Defendant does not argue that the amount calculated as repair or replacement damages was not supported by substantial evidence nor that the amount was against the weight of the evidence, *see Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976), and so we do not review those issues here. The facts suggest that the replacement septic systems cost more than the amounts originally charged by Defendant, and they were in some respects larg-

er than the systems installed by Defendant, but the evidence and reasonable inferences from it supported that the additions were necessary in order to accomplish the same purpose of the original contracts made by Defendant. In *Stom v. St. Clair Corp.*, 153 S.W.3d 360 (Mo.App. S.D.2005), the "repaired" sunroom contained additional windows. *Id.* at 362. The parties' evidence as to the cost to repair the sunroom presented "wildly different sums of $7,895.27 [paid by plaintiff to the new contractor] and approximately 20 cents per window [estimated by defendant to replace window screws]." *Id.* at 365. As the award of zero damages due to lack of evidence of diminution was reversed, the Court declined to "invade the trial court's province, as the trier of fact, to determine the weight and credibility of the evidence as to damages." *Id.* The trial court's calculation of cost of repair damages in this case is not disturbed based upon the review sought by Defendant.

Defendant concedes that damages for lost profits could theoretically be recovered in a case where a business was affected by a period of repair,[10] but he points out that there was no evidence of lost income here. He also argues that while "[Mr. Cason] may have been entitled to recover damages for the problems caused to his lake by the sewage run-off, [ ] he is not entitled to any amount he asks for."

The Casons respond that "[a] loss of use award in addition to other damages is not unprecedented" and offer *Children Int'l v. Ammon Painting Co.*, 215 S.W.3d 194 (Mo.App. W.D.2006), as an example. This case involved a breach of contract claim resulting from defendant's "imprudent performance" in painting plaintiff's printing room floor. *Id.* at 197. "While preparing the floor of the printing room, [defendant] failed to protect the printing press. The press was severely damaged, by small pieces of shot used to abrade the floor, and later determined to be beyond repair." *Id.* As a result, plaintiff suffered the destruction of the printing equipment and additional expenses in hiring someone else to perform printing services. *Id.* at 197–98. While the reviewing court affirmed the trial court's remitted *amount* of loss-of-use damages, the ability to recover damages for loss of use regardless of amount was not at issue. *Id.*

■ Damages for loss of use have been regarded as consequential damages. *See World Enters., Inc. v. Midcoast Aviation Servs., Inc.*, 713 S.W.2d 606, 610 (Mo. App. E.D.1986) (holding that a contract provision excluding consequential damages applied to loss-of-use damages). "Conse-quential damages 'are those damages naturally and proximately caused by the commission of the breach and those damages that reasonably could have been contemplated by the defendant at the time of the parties' agreement.'" *Catroppa*, 267 S.W.3d at 818 (quoting *Ullrich v. CADCO, Inc.*, 244 S.W.3d 772, 779 (Mo.App. E.D. 2008)). Thus, for the Casons to recover damages for the loss of the use of their lake, those consequential damages must have been reasonably foreseeable to Defendant at the time the contract was made. *See Gill Constr. Inc. v. 18th & Vine Auth.*, 157 S.W.3d 699, 717 (Mo.App. W.D.2004). As long as consequential damages are not duplicative of actual damages, they may be recovered in a claim for breach of contract upon proper proof. *Catroppa*, 267 S.W.3d at 817–18.

■ The parties did not request findings of fact and conclusions of law from the trial court, and specific facts supporting its judgment are not stated. As a result, "all issues of fact on which no specific findings were made are considered to have been found in accordance with the judgment." *Ankrom v. Roberts*, 126 S.W.3d 798, 800 (Mo.App. S.D.2004); Rule 73.01(c).

■ In the case at bar, the trial court heard evidence that Mr. Cason contracted with Defendant to enlarge the septic system on the Casons' property because Mr. Cason was building a lake and did not want sewage to leak into it. Further, Mr. Cason expressly told Defendant that he wanted to prevent sewage from leaking into the lake. Defendant's friend testified that there was no fence around the septic system's ground field and that there

---

10. Defendant cited *Southern Missouri Dist. Council of the Assemblies of God v. Hendricks*, 807 S.W.2d 141, 147 (Mo.App. S.D.1991) as supporting this theory. This is another case where diminution in value and costs to restore were at issue, but the cause of action in the relevant count was not breach of contract, but trespass. *Id.* at 147–48. The court contemplated the possibility of damages for loss of rent while the property was held by the trespassers, but found that no evidence of the rental value had been presented. *Id.*

should have been one "from day one" to keep the cows off of it. The trial court could have inferred that Defendant would also have seen the Casons' cows, that those cows would have access to the lake, and knew, or should have known, that they would be able to drink from the lake if the water in it was potable. Under these circumstances, the trial court did not err in finding that consequential damages in the form of loss of use of the lake were reasonably foreseeable to Defendant at the time of the parties' contracting.

■ We must next consider whether the trial court erred in determining the proper amount of damages to award for that loss of use. Defendant asserts in his point relied on that Mr. Cason "did not produce any evidence supporting the $5,000 amount that the court awarded him for loss of use of his lake[.]"

The trial court heard evidence that the purpose of the lake was to water cattle on the 100–acre farm and provide recreation. The evidence was that the watering function was lost as a result of Defendant's breach of contract, and the recreation function was restricted. But no evidence was presented as to what it cost the Casons to supply their cattle with water by other means or whether it was feasible to clean the lake and, if so, what such an undertaking would cost. Mr. Cason testified that "[t]he lake cost well over $10,000 to build[.]" He then asked the court to

award $5,000 for the Casons' loss of use of their lake.[11]

■ An owner is generally entitled to testify as to the value of his property, but "when [the] property owner's opinion is based on improper elements or an improper foundation his opinion loses its probative value." *Cohen v. Bushmeyer*, 251 S.W.3d 345, 349 (Mo.App. E.D.2008) (holding the homeowner's opinion as to value of his property was insufficient proof of value in an assessment case where the basis for his opinion was speculative). Even if we assume the trial court accepted Mr. Cason's conclusion that the contaminated condition of the lake was wholly attributable to the faulty septic system installed by Defendant, no evidence was presented to establish that the contaminated condition of the lake was permanent. Any such finding would be based on pure speculation.

While one-half of the cost to install the lake might arguably constitute substantial evidence of the value of a permanent loss of one of two intended uses for a private lake, we are not prepared to say that it constitutes substantial evidence of such a loss when the duration of the loss is unknown. As a result, we reverse the trial court's $5,000 judgment in favor of the Casons for loss of use as not supported by substantial evidence and remand the matter for a new trial on the issue of the Casons' loss of use damages only.[12] In all

11. The trial court may have simply concluded that the Casons were entitled to compensation for half of the minimum it cost them to build the lake because they were unable to use the lake for half of its intended purpose—watering cattle.

12. Reversal and remand is the preferred outcome unless it is clear that the Casons would be unable to present any proper proof of their loss of use damages on remand. *Cf. Glen-*

*stone Block Co. v. Pebworth*, 264 S.W.3d 703, 716 n. 10 (Mo.App. S.D.2008) (preference for reversal and remand instead of just reversal permitted remand for further evidence regarding characterization of deed of trust where proof was likely available). *See also King,* 64 S.W.3d at 343 (the characterization of permanent nuisance was reversed and the case was remanded for a retrial on the issue of temporary damages).

other respects, the judgment of the trial court is affirmed.

BARNEY, P.J., and LYNCH, J., Concur.